**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

COURTHOUSE NEWS SERVICE,

Plaintiff,

vs.

Case No. 1:21-cv-00710-JB-LF

NEW MEXICO ADMINISTRATIVE OFFICE OF THE COURTS; ADMINISTRATIVE OFFICE DIRECTOR ARTHUR W. PEPIN; NEW MEXICO FIRST JUDICIAL DISTRICT COURT CLERK'S OFFICE; and the FIRST JUDICIAL DISTRICT COURT CLERK KATHLEEN VIGIL,

Defendants.

**PLAINTIFF COURTHOUSE NEWS SERVICE'S REPLY**
**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Courthouse News Service ("Courthouse News") brought this action to remedy delays by New Mexico's district courts in making new civil complaints available for review. Defendants concede new civil complaints are withheld from the public and press until ***after*** court clerks complete "administrative processes" and "accept" them, however long that may take. To avoid constitutional scrutiny, Defendants first ask this Court to abstain from exercising jurisdiction over the core constitutional question presented even though there is no ongoing state judicial proceeding, and despite the weight of authority militating against abstention.

As a fallback, Defendants ask this Court to ignore controlling authority establishing that complaints are filed when they are delivered to the court, *Town of Hurley v. New Mexico Mun. Boundary Comm'n*, 1980-NMSC-083, ¶ 11, 614 P.2d 18 ("to file" a paper "is to place it in the official custody of the clerk"), and instead create a new rule that complaints are not filed until after they are administratively processed and "accepted." Dkt. 19 at 14. This new rule is essential to support their argument that the First Amendment right of access does not attach to new complaints until after "administrative processing" and "acceptance." If such a new rule were created, New Mexico courts could withhold a new complaint from the public for days, weeks, or even longer without implicating – let alone violating – the First Amendment.

If unable to avoid scrutiny altogether, Defendants hope to convince this Court their policy of withholding access to new complaints until after they are "accepted" can survive constitutional scrutiny. However, they fail to refute Courthouse News' evidence of delayed access, and they fail to sufficiently demonstrate any asserted justifications for restricting access. *See Press-Enterprise v. Sup. Ct.*, 478 U.S. 1, 14-15 (1986) ("*Press-Enterprise II*") (justifications require evidence sufficient for the Court to make "on the record findings").

Finally, Defendants cannot justify their restrictions on access given the existence of less restrictive and readily available alternatives to access, *e.g.*, the press review queue from Tyler Technologies, Inc. ("Tyler"). Defendants do not claim the Tyler press queue is incapable of addressing their claimed reasons for withholding access until after "acceptance." Rather, they claim Tyler will charge a large, *annual* fee to provide such access. This unsubstantiated claim is insufficient to survive constitutional scrutiny, and in any event, Defendants should not be allowed to evade constitutional obligations simply because they delegated control of the public record to a private party that wishes to extract a large fee before making it available to the public.

## I. The Court Should Not Abstain From Exercising Its Jurisdiction

Defendants set up their abstention argument with the incorrect, straw man premise that Courthouse News is mounting a "challenge to a New Mexico Supreme Court Order." Dkt. 19 at 9. This case involves no such challenge because New Mexico Supreme Court Order 17-8500-001 (the "Order") does not address, let alone prevent, the relief sought by Courthouse News, *i.e.*, timely access to non-confidential complaints without the delays resulting from administrative processing. *Compare* Order, generally, *with* Complaint at ¶¶ 3-4. In any case, Defendants' abstention argument necessarily fails because the Order is not an "ongoing state judicial proceeding" as defined by the Tenth Circuit and this Court. Additionally, controlling Tenth Circuit authority requires this Court to join the majority of Circuit Courts that have declined to expand the boundaries of *Younger* abstention in factually similar cases.

### A. There Is No Ongoing State Judicial Proceeding Warranting Abstention

For *Younger* abstention to apply there must be (1) an ongoing state judicial proceeding, (2) the presence of an important state interest, and (3) an adequate opportunity to raise federal claims in the state proceedings. *Ute Indian Tribe of the Uintah & Ouray Reserv'n v. Utah*, 790

F.3d 1000, 1008 (10th Cir. 2015). The first element has two subparts: the "court must determine whether there is an *ongoing* state proceeding … [and] whether that proceeding is of the *type* of state proceeding is due the deference accorded by *Younger* abstention." *Brown ex rel. Brown v. Day*, 555 F.3d 882, 888 (10th Cir. 2009). "[I]mplicit in the requirement that there be ongoing state proceedings is the assumption that the federal plaintiff is a party to those proceedings." *Stein v. N.M. Jud. Stands. Comm'n*, 2006 WL 8444122, at *3 (D.N.M. June 15, 2006).

Unable to point to any ongoing state judicial proceeding – let alone one in which Courthouse News is a party – Defendants argue the Order is an "ongoing, standing order" that "implicates an important State interest." Dkt. 19 at 11. However, the Order is not judicial in nature, nor is it the type of state proceeding to which *Younger* might apply. The Tenth Circuit recently observed that, in *Sprint Comms., Inc. v. Jacobs*, 517 U.S. 69 (2013), the Supreme Court:

> "significantly limited the reach of *Younger* abstention to only (1) state criminal prosecutions, (2) civil enforcement proceedings akin to criminal prosecutions such as state-initiated disciplinary proceedings against a lawyer for violation of state ethics rules, and (3) civil proceedings implicating a State's interest in enforcing the orders and judgments of its courts such as state court contempt proceedings."

*Catanach v. Thomson*, 718 F. App'x 595, 598, n.2 (10th Cir. 2017); *accord U.S. v. N.M. Env't Dep't*, 2020 WL 1536151, at *6 (D.N.M. Mar. 31, 2020).

None of these enumerated types of civil proceedings exist here. At most, the Order implements an administrative rule or policy concerning online access to court records. *See* NMRA 23-106.1(D)(9) (addressing rule-making procedure for New Mexico Supreme Court and requiring order adopting rules approved by the Court). A mere administrative rule or policy does not meet the requirements for *Younger* to apply, and in any event, there is "no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state

policy."[1] *See Stein*, 2006 WL 70315, at *4.

### B. The Tenth Circuit Does Not Support Expanding the Reach of *Younger* Abstention

Abstention "is the exception, not the rule" in the Tenth Circuit, and hence should be "rarely ... invoked, because the federal courts have a virtually unflagging obligation ... to exercise the jurisdiction given them." *Ex rel Brown*, 555 F.3d at 888 (*quoting Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)); *see also Planned Parenthood of Kansas v. Andersen*, 882 F.3d 1205, 1221 (10th Cir. 2018) (affirming same).

As a rule, federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 25-26 (1983) ("the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications' that can suffice … to justify the surrender of [] jurisdiction"). "[C]ourts should be particularly reluctant to abstain in cases involving [] challenges based on the First Amendment." *Stein*, 2006 WL 8444122 at *6 (citing *Dombrowski v. Pfister,* 380 U.S. 479, 489-490 (1965)).

Defendants' abstention argument is based almost entirely on a Seventh Circuit case, *Courthouse News Service v. Brown*, that flipped that rule on its head. In *Brown*, the Seventh Circuit acknowledged that "[t]he situation here is not a traditional *Younger* scenario: there is no individual, ongoing state proceeding that plaintiffs seek to enjoin." 908 F.3d at 1072. It also acknowledged the case did "not map exactly on the orders in *O'Shea* and [*Rizzo v. Goode*, 423 U.S. 362 (1976)]" *id*., at 1073, both of which extended the scope of *Younger* to other specific

---

[1] As discussed below, the relief sought by Courthouse News does ***not*** require overturning state policy or have the effect of "enjoin[ing]" operation" of the Order. Dkt. 19 at 11.

contexts. Instead, citing a general "principle of comity," the Court observed Courthouse News could have adjudicated its constitutional claim in state court, and held that the principles underlying *Younger* and its progeny *required* it to do so. *Brown*, 908 F.3d at 1074.

The Tenth Circuit forecloses the wayward path forged by *Brown* because "principles of equity, comity, and federalism have little force in the absence of a pending state court proceeding." *Rocky Mtn. Gun Owners v. Williams*, 671 Fed. Appx. 1021, 1024 (10th Cir. 2016). Moreover, the "significantly limited" reach of *Younger* abstention to which the Tenth Circuit adheres, *Catanach*, 718 Fed.Appx. at 597, n.2, aligns with the majority of circuit and district courts that have rejected abstention challenges in factually analogous cases involving the same First Amendment claim presented here.[2] *See Schaefer*, 2 F.4th at 324-25 (rejecting abstention argument in case involving First Amendment challenge to state clerk's no-access-before-process policy); *Planet I*, 650 F.3d at 790-92 (same); *Courthouse News Serv. v. Tingling*, 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016) (same); *see also, e.g., Hartford Courant v. Pellegrino*, 380 F.3d 83, 85-86 (2d Cir. 2004); *Rivera-Puig v. Garcia-Rosario*, 983 F.2d 311, 319-20 (1st Cir. 1992). Notably, the Fourth Circuit (*Schaefer*) now joins the Ninth Circuit (*Planet*) in rejecting the Defendants' abstention argument. *See Schaefer*, 2 F.4th at 325, n.2 (describing *Brown* as "inconsistent with our precedent and Supreme Court guidance.").

### C. <u>The Order Does Not Provide Any Basis for Denying the Motion</u>

Defendants wrongly assert that Courthouse News is asking "this Court to preliminarily [ ] enjoin the clerks from following [the Order]" based on the unsupported – and incorrect – premise that the Order requires that court clerks "review[] electronically submitted complaints before

[2] The *Gilmer* case cited by Defendants is currently on appeal in the Eighth Circuit. Regardless, the *Gilmer* court merely followed *Brown* without any unique analysis or reasoning that would justify this Court's departure from controlling Tenth Circuit precedent. *See Courthouse News Serv. v. Gilmer*, 2021 WL 243914, *8 (E.D. Mo. June 15, 2021).

determining whether to reject or accept" them. Dkt. 19 at 9-11. The Order does not state this, and the authorities cited by Defendants do not preclude them from providing access to new civil complaints before they are "accepted" or support their claim that providing such access would require them to violate or "defy" the Order. Dkt. 19 at 11.

Defendants point to Rule 1-079(C) NMRA of the New Mexico Rules of Civil Procedure, which identifies certain types of proceedings that are automatically sealed without a motion or order. However, those proceedings are excluded from the types of cases that can be e-filed with the New Mexico courts. *See* Rule 1-005.2(a) NMRA (defining "EFS" as electronic filings system for use by the district "in civil actions"), and Rule 1-005.2(b) ("'civil actions' does not include…actions sealed under Rule 1-079 NMRA"). These documents would therefore be filed conventionally, not electronically, and easily segregated from the non-confidential civil complaints at issue.[3] Regardless, Rule 1-079(D) does not require clerks to withhold access to non-confidential civil complaints until after they are "accepted."

Defendants go on to argue Rule 1-005.2 and Rule 1-079 "imply" that clerks are able to reject or return a filing if they include information that should be sealed or otherwise remain confidential," but this is simply incorrect. "[U]nder Rule 1-005(E), a court clerk lacks the discretion to reject pleadings for technical violations," *Ennis v. Kmart*, 2001-NMCA-068, ¶ 10, and Rule 1-079(D)(2) expressly states clerks "shall not refuse for filing any document that does not comply with this paragraph." [4]

Defendants also cite Rule 12-307.2(F) NMRA of the New Mexico Rules of Appellate

---

[3] As Defendants note, Rule 1-079(D) states court clerks are *not required* to review or screen documents for personal identifier information.

[4] New Mexico court clerks are obligated to accept the filings they receive, and a pleading will be considered filed when delivered to the clerk. *Ennis,* ¶ 10. It is then up to the trial court to decide whether to allow a party to correct deficiencies or to strike the pleadings. *Id*.

Procedure, but it does not address acceptance or rejection of court filings or preclude access to new complaints until after they are "accepted." Rather, it clarifies filing deadlines for e-filed complaints by adopting the traditional rule that documents are filed when they are delivered to the court. *See* Rule 12-307.2(F) (for purposes of filing deadlines, documents are filed on "the date and time that the filer submits [them]").

Finally, Defendants' Exhibit 3 does not identify inclusion of confidential information as a basis for a clerk to reject a filing. Dkt. 19-1 at 19-20. Rather, it identifies "[u]njustifiable flagging of pleadings confidential – sealed" as a basis for rejection, *id.* at 20, which is consistent with New Mexico's restrictions on sealing records. *See* Rule 1-079(G) (adopting *Press-Enterprise II* requirements of overriding interest and narrow tailoring before records can be sealed).

## II. Defendant Cannot Avoid Constitutional Scrutiny By Redefining When Complaints are Filed or When the Right of Access Attaches To Them

Defendants do not, and cannot, deny that a First Amendment right of access attaches to new civil complaints when they are filed with the court. *Planet III*, 947 F.3d at 588 ("the qualified right of access to nonconfidential civil complaints arises when they are filed with the court"); *accord Schaefer*, 2 F.4th at 328. They therefore invent a new definition for when a complaint is filed – *i.e.*, when it is "accepted" – so they can delay when the First Amendment right of access attaches. *See*, *e.g.*, Dkt. 19. at 14 ("The First Amendment right of access does not attach to [a] pleading upon receipt, as Plaintiff is claiming, but rather when they are filed, or "accepted."). Defendants cite no authority for this proposition, and it must be rejected.

New Mexico courts – and this Court – recognize that a document is filed when it is *delivered* to the court clerk. *See Town of Hurley,* ¶ 11 ("to file" a paper "is to place it in the official custody of the clerk"); *Gallagher v. Linwood*, 1924-NMSC-056, ¶ 12 ("The most accurate definition of filing a paper is that it is its delivery to the proper officer…"); *Ennis*, ¶¶ 8,

10 (same); *Chavez v. Wackenhut Corr. Corp., No.* CIV 08-696 BB/RHS, 2011 WL 13291089, at *2, n. 4 (D.N.M. Jan. 14, 2011) (same).

This well-established definition of the word "filed" is not unique to New Mexico or this Court. *See, e.g., Klemm v. Astrue*, 543 F.3d 1139, 1142 (9th Cir. 2008) (notice of appeal was "filed" on the day the district court "physically received" it); *Holman v. Chevaillier's Adm'r,* 14 Tex. 337, 339 (1855) ("filing" … simply means [the filer] shall place it in the official custody of the clerk"); *M-11 Ltd. P'ship v. Gommard,* 330 P.3d 356, 358 (Ariz. Ct. App. 2014) (documents delivered by mail are considered filed as of date of receipt by the clerk of the court).

This meaning of the word "filed" – *i.e.*, *delivered* to the court – is consistent with the Ninth Circuit's holding in *Planet III* that the right of access to new civil complaints arises when they are "filed" with the court, *i.e.*, *received* by the court. *Planet III* was an appeal of a summary judgment order that concluded "the qualified right of timely access must arise the moment a complaint is *received by the court*, rather than after 'processing' is completed." *Courthouse News Serv. v. Planet*, 2016 WL 4157210, *13 (C.D. Cal. May 26, 2016) (emph. added). After all, "it would make little sense to restrict the media's ability to monitor until after court personnel have had an opportunity to delay providing access to the requested complaints." *Id.*

On appeal, the Ninth Circuit characterized the district court's holding as "the right to timely access attaches at the moment of filing when the complaint is received by the court," *Planet III*, 947 F.3d at 588, and agreed with it: "[W]e conclude, as did the district court, that the qualified right of access to nonconfidential civil complaints arises when they are filed with the court …." *Id*. at 594. Applying the second stage of the *Press-Enterprise II* framework, the court measured delays from the moment of receipt, *see id*. at 597-98, and concluded defendant's policy

of delaying access until after processing failed to satisfy constitutional scrutiny. *Id.* at 596-98.[5]

Moreover, allowing clerks to avoid constitutional scrutiny until after they have already withheld access to new complaints for processing is antithetical to the principles underlying the right of access protected by the First Amendment. *See, e.g., Schaefer*, 2 F.4th at 325-328 (discussing reasons why "experience" and "logic" prongs of *Press-Enterprise II* test support right of access to new civil complaints); *Planet III*, 947 F.3d at 590-594 (same).

Finally, Defendants incorrectly claim that "the issue before the Court here" is "the difference between 'receipt' and 'acceptance' for clerical administration." Dkt. 19 at 10, n. 8. The issue is when the First Amendment right of access attaches to new civil complaints. Defendants' administrative use of certain terms is not determinative because, if it were, court clerks and administrators would be free to manipulate the reach of the First Amendment through administrative definitions, as Defendants seek to do here.

## III. Courthouse News Is Not Demanding "Immediate Access" to New Complaints

Defendants turn *Press-Enterprise II* on its head by incorrectly arguing Courthouse News is claiming a right of "immediate access" to new civil complaints. Dkt. 19 at 14. The question is not whether the First Amendment confers a right of "immediate access." Rather, because the right of timely access attaches on receipt, and delays from that point are subject to *Press-Enterprise II* scrutiny, the question is whether Defendants' policy of withholding access to new civil petitions until after processing and "acceptance" can survive constitutional scrutiny.

Indeed, the Ninth Circuit adopted and applied this standard to the clerk's no-access-before-process policy in *Planet III*. 947 F.3d at 596. Defendants seize on the Ninth Circuit's

---

[5] On remand, the district court issued an amended judgment for declaratory and injunctive relief confirming the "qualified right of timely access attaches when new complaints are *received* by a court, rather than after they are 'processed'" *Courthouse News Serv. v. Planet*, 2021 WL 1605216, *1 (C.D. Cal. Jan. 26, 2021) (emph. added).

statement in *Planet III* that it does not view the right of access as "demanding immediate, pre-processing access," *id*. at 594; Dkt. 19 at 16, but they omit a critical holding:

> To survive *Press-Enterprise II*'s two-prong balancing test, Ventura County must demonstrate first that there is a "***substantial probability***" that its interest in the fair and orderly administration of justice would be ***impaired by immediate access***, and second, that ***no reasonable alternatives exist*** to "adequately protect" that government interest.

*Planet III*, 947 F.3d at 596 (*citing Press-Enterprise II*, 478 U.S. at 14) (emph. added).

## IV. <u>Defendants Fail to Carry Their Burden of Showing a Likelihood that Their Policies Resulting in Delayed Access Can Survive Constitutional Scrutiny</u>

Defendants cannot avoid the delays at issue by asserting complaints are available to the press "[i]mmediately upon *acceptance*," Dkt. 19-1 at ¶ 15 (emph. added), for the reasons discussed above.[6] This Court must examine the delays at issue – *i.e.*, those following the court's receipt of new complaints resulting from administrative processing – and determine whether Defendants can justify them under the second phase of the *Press-Enterprise II* test.

### A. <u>Defendants Fail to Refute Courthouse News' Evidence of Delayed Access</u>

The Declaration of Judge James Noel ("Noel Declaration") does not attempt to refute Courthouse News' evidence of delays other than the conclusory statement that "submissions are filed [*i.e.*, accepted] within a day" of receipt. Noel Decl., ¶ 11. However, the declarant cites to nothing more than a vague "Currentcy" report without any explanation of what this document means or purports to show. *Id*., Attach. B. The "Currentcy" report also does not appear to address the relevant time period covered by Courthouse News' evidence. *Compare* Noel Decl., Attach B. (showing "Start Date = 1/1/2020" and "End Date = 12/31/2020), *with* Prieskop Decl., at ¶¶ 15-17 (establishing delays during period 1/1/2021 through 6/30/2021).

---

[6] Defendants' balance of equities argument relies on their "immediate upon acceptance" and "violate the Order" arguments, Dkt. 19 at 19-20, which also fail for reasons discussed.

Defendants also cite to Exhibits 2 and 5 of their memorandum, Dkt. 19 at 8, but these exhibits are not addressed in the Noel declaration and Defendants make no attempt to authenticate or explain them. In any event, these two exhibits do not refute Courthouse News' evidence of delays. Defendants' Exhibit 5 is another vague and unexplained "Currentcy" report. Dkt. 19-1 at 25. Exhibit 2 appears to address the one-month period of July 26 to August 25, 2021, and not the earlier six-month period established by Courthouse News' evidence. Dkt. 19-1 at 18. For that one-month period, however, Defendants claim the "average" time required to accept new complaints was twelve hours. Dkt. 19 at 8. Assuming this is accurate, it does not contradict or refute Courthouse News' evidence establishing 30% of new civil complaints filed statewide were withheld for one or more days during an earlier four-month period in 2021, or evidence establishing 59% of new civil complaints filed in the Santa Fe District Court were withheld for one or more days during the first six months of 2021, because an "average" processing time of twelve hours would produce regular delays of at least one day. For instance, a complaint received by the court at 1:30 p.m. on any given court day would not be processed and accepted until at least the following court day, or longer if processing requires 12 business hours.

**B. <u>Defendants Are Not Likely To Justify the Delays In Access</u>**

Defendants offer several justifications for withholding access to new civil complaints until after administrative processing, none of which are likely to survive constitutional scrutiny.

Defendants cite a need to "ensure effective and efficient judicial administration," Dkt. 19 at 16, but this general statement alone cannot justify their policy. *See Hagestad v. Tragesser,* 49 F.3d 1430, 1434 (9th Cir. 1995) (presumption of access "may be overcome only 'on the basis of articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture'").

Defendants also cite the need to "comply with and follow the mandates" of rules of civil

procedure and court rules, Dkt. 19 at 18, but, as discussed, they fail to identify any statute or rule that precludes them from providing pre-processing access to new complaints. They also fail to city any rule or order that would be violated if they provided such access.

Defendants go on to claim they "have a duty to ensure pleadings are filed appropriately" and it is "necessary" to verify each pleading." *Id.* No authority supporting such an amorphous duty is cited, but even if true, they fail to identify any particular harm that would result from press or public access to complaints that have not been so-called "verified." The ministerial act of endorsing a filing has no bearing on its status as such, *Ennis v. Kmart*, 2001-NMCA-068, ¶ 8, and there are other ways for courts to protect confidential records without blanket restriction of access to all new non-confidential filings. *See* Dkt. 2-2 at 8-11 (Girdner Decl. §§ V and VI).

Finally, Defendants fail to establish that the Tyler press review queue – *i.e.*, a less restrictive alternative – is not available as a means of providing timely, pre-processing access to new civil complaints. Defendants cite only the alleged cost, but do not attempt to refute or deny Defendant Pepin's acknowledgement in his 2018 Memorandum that Tyler can install a press queue "at no cost to the courts." *See* Dkt. 2-2 at 21. Their unsubstantiated claim that Tyler would charge them $108,000 ***per year***, Dkt. 19-1 at 7 (¶ 16), raises questions about the ability of private companies to control and profit from the public record at the expense of the First Amendment right of access. *See* Dkt. 2-2 at 94-96 (discussing private control of the public record). In any event, Defendants cannot meet their burden without justifying why the press queue feature, provided by Tyler ***at no cost*** to other courts, would here cost ***six-figures annually*** even though New Mexico uses the same e-filing and case management systems as those other courts. *See* Dkt. 2-2 at 8-11 (§§ V, VI); *see also Press-Enterprise II*, 478 U.S. at 14-15 (justifications require evidence sufficient for the Court to make "on the record findings").

Respectfully submitted,

PATRICK J. ROGERS, LLC

By: */s/ Patrick J. Rogers*
Patrick J. Rogers
20 First Plaza Center NW, Suite 725
Albuquerque, NM 87102
Tel: (505) 938-3335
Fax: (505) 243-6458
Email: patrogers@patrogerslaw.com

PEIFER, HANSON, MULLLINS & BAKER, P.A.

By: */s/ Gregory P. Williams*
Gregory P. Williams
Post Office Box 25245
Albuquerque, NM 87125-5245
Tel: (505) 247-4800
Fax: (505) 243-6458
Email: gwilliams@peiferlaw.com

- and -

JACKSON WALKER L.L.P.

By: */s/ John K. Edwards*
Charles L. Babcock
Texas Bar No. 01479500
Email: cbabcock@jw.com
John K. Edwards
Texas Bar No. 24002040
Email: jedwards@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
Tel: (713) 752-4200
Fax: (713) 752-4221

*Attorneys for Plaintiff Courthouse News Service*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 20, 2021, the foregoing Notice was filed electronically pursuant to CM/ECF procedures for the District of New Mexico, which caused counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

PEIFER, HANSON, MULLINS & BAKER, P.A.

By: */s/ Gregory P. Williams*
Gregory P. Williams